IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CIS COMMUNICATIONS, LLC, a Missouri limited liability company, individually and on behalf of all those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> REPUBLIC SERVICES, INC., a Delaware corporation, <br><br> and <br><br> ALLIED SERVICES, LLC, a Delaware limited liability company, <br><br> Defendants. | Case No. 4:19-cv-00389-JAR |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Republic Services, Inc. ("Republic") and Allied Services, LLC ("Allied," and together with Republic, "Defendants") move to dismiss plaintiff CIS Communications, LLC's ("CIS's") Complaint (3/1/19) ("Complaint") in its entirety.

## INTRODUCTION

CIS brings two causes of action against Defendants: (i) breach of contract; and (ii) request for declaratory judgment. Compl. ¶¶ 98-110. Both causes of action fail as a matter of law and should be dismissed for the following reasons.

To begin, both causes of action are improperly brought against Republic. The underlying contract (the "Service Agreement"), attached to and relied upon by CIS in its Complaint, demonstrates that CIS contracted with Midwest Waste, a division of Allied, not Republic.

Because Republic is not a party to the Service Agreement, it cannot be held liable for any damages stemming from the alleged breach of that contract which forms the foundation of both claims.

Further, CIS's claims fail as a matter of law because both are based upon allegations of conduct (*i.e.*, service fee increases) that are expressly permitted under the terms of the Service Agreement. CIS cannot establish a breach of contract when Allied's authority to implement such price increases was expressly provided under the Service Agreement. Also, the request for declaratory judgment is nothing more than a re-pleading of the breach of contract claim and, as such, is prohibited under established Missouri law.

Accordingly, CIS's Complaint does not and cannot assert viable causes of action and, therefore, the Court should dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

Midwest Waste and CIS entered into a Service Agreement for waste removal services effective May 24, 2005. Compl, Ex. 1 ("Service Agreement").[1] The Service Agreement[2] is for an initial two-year term and automatically renews for successive one-year periods unless

---

[1] The Court may consider "exhibits attached to the complaint" as well as "materials embraced by the complaint," such as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings," without converting a 12(b)(6) motion to a motion for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation omitted); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) (explaining that exhibits to a pleading are considered part of a pleading for purposes of a 12(b)(6) motion). Here, CIS attached a copy of the Service Agreement and invoice to its Complaint. CIS refers to and relies upon the contents of that Service Agreement and invoice to support its claims. Compl ¶¶ 3, 27-38, 48-85, 98-110.

[2] Portions of the copy of the Service Agreement attached to the Complaint are very difficult to read. An additional copy of the Service Agreement is attached hereto as Exhibit A.

2

terminated by either party at the end of the initial term or a renewal period. Service Agreement, Article II; *see* Compl ¶ 25.[3]  CIS terminated the Service Agreement in 2018, after approximately thirteen years of receiving waste removal services through this contractual relationship. Compl ¶ 73.

## ARGUMENT

**I.     LEGAL STANDARD.**

To survive a motion to dismiss, a plaintiff must plead sufficient facts "showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). This obligation requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). Moreover, factual allegations must be enough to raise a right to relief above the speculative level. *Id.* While federal pleading standards do not require detailed factual allegations, they demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff cannot meet its burden simply by contending that it "might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 550 U.S. at 561.

Rather, a complaint must contain sufficient factual matter that, accepted as true, states a claim of relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation omitted)

---

[3] While the parties do not dispute that Missouri law governs CIS's causes of action, CIS incorrectly asserts that the Service Agreement lacks a choice-of-law provision. Compl.¶ 97. In fact, the Service Agreement states that it "shall be construed in accordance with the laws of the state of Missouri." Service Agreement, Introductory Paragraph.

3

**II.  CIS DID NOT HAVE A CONTRACT WITH REPUBLIC AND THEREFORE ITS CAUSES OF ACTION AGAINST REPUBLIC SHOULD BE DISMISSED.**

Both of CIS's causes of action, as asserted against Republic, are premised on an alleged contractual relationship between CIS and Republic. Compl ¶¶ 3, 27-38, 48-85, 98-110. Specifically, CIS contends Republic breached the terms of the Service Agreement by increasing the service fee in a manner not authorized under the agreement. *Id*. But this alleged contractual relationship between CIS and Republic simply does not exist. Rather, as the face of the Service Agreement makes clear, CIS contracted with Midwest Waste for waste hauling services. Service Agreement, Introductory Paragraph. Further, as CIS contends in the Complaint, Midwest Waste merged into defendant Allied, not Republic. *See* Compl. ¶ 8. Indeed, CIS alleges that Allied and Republic are distinct entities. *Id.* ¶ 9. As a result, the face of the Complaint makes clear that the entire premise of CIS's breach of contract and declaratory judgment claims is factually deficient.

The claims are also legally deficient because without privity of contract between the parties there is no contractual duty, therefore a breach of contract claim necessarily fails. *East v. Galebridge Custom Builders, Inc.*, 839 S.W.2d 720, 722 (Mo. Ct. App. 1992) (affirming motion to dismiss where lack of privity of contract foreclosed plaintiffs' breach of contract claim). Because Republic is a not a party to the contract there is no viable basis—factually or legally—for CIS to assert any causes of action against Republic. As a result, both of CIS's causes of action against Republic should be dismissed.

**III.  THE EXPRESS TERMS OF THE CONTRACT DEFEAT CIS'S BREACH OF CONTRACT CLAIM.**

Even setting aside CIS's lack of privity of contract with Republic, and as it also relates to defendant Allied, CIS's claim for breach of contract fails because CIS cannot establish the required elements for its claim. To succeed on a breach of contract claim, CIS must establish: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance

4

pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *WireCo WorldGroup, Inc. v. Liberty Mut. Fire Ins. Co.*, 897 F.3d 987, 994 (8th Cir. 2018) (establishing the elements for a breach of contract claim) (citation omitted).  While there is no dispute that there is a contract between Midwest Waste—now *Allied*—and CIS, CIS cannot credibly claim that Allied (or Republic) breached the Service Agreement by increasing the service fees because the Service Agreement permits such conduct.

Specifically, CIS claims that it "has been assessed certain price increases which are not authorized by the terms of its service contract."  Compl ¶ 3; *see id.* ¶ 104.  Contrary to CIS's allegations, however, the Service Agreement established Allied's contractual right to implement increases in the service fees for numerous different reasons.

First, the Service Agreement established that Allied could increase CIS's rate based upon increased costs Allied incurred:

> Because disposal and fuel costs constitute a significant portion of the cost of Midwest Waste's services provided hereunder Customer [CIS] agrees that Midwest Waste may increase the rates hereunder proportionally to adjust for any increase in such costs or any increase in transportation costs due to changes in location of the disposal facility.  Customer agrees that Midwest Waste may also increase the rates from time to time to adjust for increase in the Consumer Price Index, and Customer agrees that Midwest Waste may also proportionally pass through to Customer increases in the average weight per container yard of the Customer's Waste Materials, increases in Midwest Waste's costs due to changes in local, state or federal rules, ordinances of regulations applicable to Midwest Waste operations or the services provided hereunder and increases in taxes, fees or other governmental charges assessed against or passed through to Midwest Waste (other than income or real property taxes).

Service Agreement, Article VI.

Second, the Service Agreement also expressly states that Allied could increase CIS's fees for any other reason, based upon CIS's consent:

5

> [F]or reasons other than those set forth above with the consent of the Customer. *Such consent may be evidenced* verbally, in writing or *by the actions and practices of the parties*.

*Id.* (emphasis added). In Missouri, "consent can either be express or implied." *See Maples v. United Sav. & Loan Ass'n,* 686 S.W.2d 525, 527 (Mo. Ct. App. 1985) (establishing that consent can be accomplished and evidenced by the conduct of parties and drawing a similarity to the "apparent mutual assent" necessary to form a contract). "'Implied consent' is that manifested by signs, actions or facts, or by inaction or silence which creates an inference that consent has been given." *Id.* (citation omitted) "[A]ssent is not determined by the state of mind, but by the conduct of the parties and the language employed by them, judged by a reasonable standard." *Id.*

Here, CIS's claim for breach of contract hinges entirely on its assertion that it did not consent to the increases to the service fee it was paying. Compl ¶¶ 57-59. CIS's own allegations, however, defeat its contention about lack of consent. Indeed, CIS admits that it had been receiving waste hauling services and paying services fees, which "increased . . . on a regular basis," over the span of approximately thirteen years. *Id.* ¶¶ 7, 46, 58, 79, 101-102. With knowledge of those price increases, CIS routinely paid these prices and did not "complain about the continuing increase in its Service Charges" until 2018. *Id.* ¶ 69. CIS's acceptance and payment of those price increases for 13 years, undeniably evidences its consent to the increasing service fees.

CIS's suggestion in the Complaint (at ¶ 53) that the billing cycle itself somehow prevented it from providing consent before services were provided at the increased rate is also inconsistent with the underlying Complaint allegations. For example, CIS admits that it received an invoice that contained a notice from Allied that it was implementing a price increase approximately twenty days before any payment was due under the new price regime. *Id.* Other

6

than the single instance in 2018, CIS nowhere alleges that it used this twenty-day period to address or otherwise reject the increased fee before payment was due. To the contrary, CIS received waste hauling services and paid for those services, with notice of the price increase, for thirteen years. *See id.* ¶¶ 7, 46, 58, 79, 101-102. As such, CIS's contention that it lacked knowledge related to the increasing service fees, (*id.* ¶¶ 58, 79) is contradicted by its own allegations and cannot be used as support for its claim of breach of contract.

The express terms of the Service Agreement provided Allied with the contractual right to increase service fees. CIS's conduct for more than a decade evidences its acceptance of and consent to those increased services fees. Accordingly, CIS cannot establish the requisite element of breach, or any resultant damages, to sustain a breach of contract claim. CIS's claim for breach of contract fails as a matter of law and should be dismissed.[4]

## IV.   MISSOURI LAW PROHIBITS CIS'S REQUEST FOR DECLARATORY JUDGMENT.

A request for declaratory judgment can only succeed where there is: "(1) a justiciable controversy; (2) legally protectable interests; (3) a controversy ripe for judicial determination; and (4) an inadequate remedy at law." *Century Motor Corp. v. FCA US LLC*, 477 S.W.3d 89, 95 (Mo. Ct. App. 2015) (establishing the requirements in Missouri for a declaratory judgment and reversing declaratory judgment due to speculative nature of claims). "Declaratory judgment is not a general panacea for all real and imaginary legal ills, nor is it a substitute for all existing remedies and it should be used with caution." *Id.* (quotations and citation omitted) "It is well-settled that declaratory relief is not proper where the real cause of action is an action at law for

---

[4] The statute of limitations on a breach of contract claim is five years. R.S.Mo § 516.120(1); *see Al-Khaldiya Elecs. & Elec. Equip. Co. v. Boeing Co.*, 571 F.3d 754, 758 (8th Cir. 2009) (recognizing Missouri's five year statute of limitations on breach of contract claims). Thus, at a minimum, CIS should be precluded from pursuing any breach of contract claim based upon conduct occurring prior to March 2014.

breach of contract." *Id.* at 96 n.6 (citing several Missouri cases that prohibit actions like the one here and that stand for the proposition that "[a] petition seeking declaratory judgment that alleges breach of duties and obligations under the terms of a contract and asks the court to declare those terms breached is nothing more than a petition claiming breach of contract," and that a "dual action for declaratory judgment and for breach of contract was mutually exclusive") (citations omitted).

Here, CIS's request for declaratory judgment rests entirely upon its allegations that it was charged fees that were not authorized under the Service Agreement. Compl ¶ 108. As such, its request for declaratory judgment is nothing more than a re-pleading of its breach of contract claim. Missouri law prohibits such an action. *See*, *e.g., Century Motor Corp.,* 477 S.W.3d at 95. Moreover, "[t]he purposes of [] declaratory judgment are to give parties relief from uncertainty and insecurity and to reduce multiple lawsuits." *Id.* (quotations and citations omitted) Those purposes cannot be accomplished here. CIS admits that it terminated the Service Agreement at issue here in 2018 (Compl. ¶ 73), thus any suggestion that it is somehow subjected to uncertain and ongoing damages as a result of the alleged unauthorized charges is without merit.

CIS's request for declaratory judgment fails as a matter of law and should be dismissed.

## CONCLUSION

For the reasons stated above, the Court should dismiss CIS's Complaint in its entirety with prejudice.

Dated: April 17, 2019          Respectfully submitted,


By: */s/* Steven J. Alagna
    Jeffrey Russell (MO 35158)
    jsrussell@bclplaw.com
    Steven J. Alagna (MO 68980)
    steven.alagna@ bclplaw.com

    BRYAN CAVE LEIGHTON PAISNER LLP
    211 North Broadway, Suite 3600
    St. Louis, MO 63102
    (314) 259-2000

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 17, 2019, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

                                                                               */s/* Steven J. Alagna