Exhibit A

# MIDWEST WASTE — Customer Service Agreement

Agreement Number: C-31614
Account Number: 240710-1

## CUSTOMER NAME / INVOICE TO
CUSTOMER NAME:
TITLE:
ADDRESS:
CITY, STATE:
ZIP CODE:
TEL NO:
FAX NO:

## SITE LOCATION / SERVICE ADDRESS
CUSTOMER NAME: CIS
ADDRESS: 749 OLD BALLAS
CITY, STATE, ZIP CODE: CREVE COEUR, MO 63141
TEL NO: 721-5405    FAX NO: 727-6503
AUTHORIZED CONTACT: 

## CUSTOMER SERVICE INFORMATION

| QTY | SIZE | C | CONTAINER | QB | M | T | W | TH | F | S | SVC CODE | EFFECTIVE DATE | Loc | LIFT CHARGE | DELIVERY / PICKUP | EQUIPMENT | ENV | ONE-TIME | FREQUENCY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N1 CY | 45 | - | 1 P3D2541 | 1X | | | | | | | B2 | 5-27-05D | V | | 26.00 | 18.00 | | | |
|  |  |  |  |  |  |  |  |  |  |  |  | 6/2/05 |  |  |  |  |  |  |  |

MONTHLY SERVICE CHARGES

CONTAINER DELIVERY INSTRUCTIONS:
PERMANENT ROUTE NOTES:
ADDITIONAL NOTES / COMMENTS:

Maximum Load Weight:
C.Y. = ___ Ton   C.Y. = ___ Tons
Disposal Cost Per Ton Over Maximum: $

Minimum On-Site Service Time: ___ min.
Minimum Disposal Time: ___ min.
Cost Per Hour Over Maximum: 

### SERVICE OPTIONS
LOCK: ☐ YES ☒ NO
PUSHOUT: ☐ YES ☒ NO $
ENCLOSURE: ☐ YES ☒ NO $

Hours of Operation: FROM ___ M TO ___ M

RESTRICTED: ☐ 8AM TO PM   ACCESSIBILITY: ☐ SPECIAL SERVICE   ACCESS OVER TRASH, MAILBOXES, FENCES OR OVERHANGS: ☒ NO

### FOR OFFICE USE ONLY
JOB NUMBER:
TERM:
REVENUE/MO: 01282000
TERRITORY: 01282000
CREDIT LIMIT:

COMMENTS:
PURCHASE ORDER NUMBER:
TRANSFER CODE: 01A
CUST #:
INITIAL ASSESSMENT:
CREDIT CARD CODE:
ENTERED BY:
DATE:
COMPETITOR:

Signatures:
X (Authorized Customer Signature)   X Bruce P. Styrs   Printed Name: Managing Member   5-24-05
X (Midwest Waste Representative Signature)   For Lorna   Printed Name   5-24-05

## THIS IS A CONTRACT FOR A TERM OF 24 MONTHS
### TERMS AND CONDITIONS

The Agreement (the "Agreement") legally binds the undersigned individual identified under "Customer Name" ("Customer") and Midwest Waste ("Company") subject to the conditions specified below and on the reverse side and shall be construed in accordance with the laws of the state of Missouri.

ARTICLE I. SERVICES RENDERED: Customer grants to the undersigned Midwest Waste the exclusive right to collect and dispose of Customer's Waste Materials (which include recyclable materials) and agrees to make the payments as provided for herein and Midwest Waste agrees to furnish such services and equipment shown, all in accordance with the terms of this Agreement.

ARTICLE II. TERMS: THE INITIAL TERM (THE "INITIAL TERM") OF THIS AGREEMENT IS TWO YEARS FROM THE DATE MIDWEST WASTE'S EQUIPMENT IS DELIVERED TO CUSTOMER'S LOCATION ("EFFECTIVE SERVICE DATE"). THIS AGREEMENT SHALL AUTOMATICALLY RENEW FOR SUCCESSIVE ONE YEAR TERMS (THE "RENEWAL TERM") THEREAFTER UNLESS EITHER PARTY SHALL GIVE WRITTEN NOTICE OF TERMINATION BY CERTIFIED MAIL TO THE OTHER AT LEAST THIRTY (30) DAYS PRIOR TO THE TERMINATION OF THE INITIAL TERM OR ANY RENEWAL TERM.

ARTICLE III. WASTE MATERIALS: The Waste Materials to be collected and disposed of by Midwest Waste pursuant to this Agreement is all solid waste (including recyclable materials) generated by Customer (the "Waste Material"). Waste Material specifically excludes and Customer agrees not to deposit in Midwest Waste's equipment or place for collection by Midwest Waste any radioactive, volatile, corrosive, highly flammable, explosive, biomedical, infectious, bio-hazardous, toxic or hazardous materials as defined by applicable Federal, state, provincial or local law or regulation ("Excluded Waste").

CONTINUED ON REVERSE

FILE COPY

| | |
|---|---|
| **ARTICLE IV**<br>**TITLE** | Midwest Waste shall acquire title to the Waste Material when it is loaded into Midwest Waste's truck. Title to and liability for any Excluded Waste shall remain with Customer and Customer expressly agrees to defend, indemnity and hold harmless Midwest Waste from and against any and all damages, penalties, fines and liabilities resulting from or arising out of the deposit of Excluded Waste in Midwest Waste's trucks, containers or other equipment. Customer agrees to comply with any description of and/or procedures with respect to removal of contaminants or preparation of recyclable material set forth above. In the event that any recyclable material furnished to Midwest Waste by Customer is, due to presence of contaminants, determined by Midwest Waste not to be resalable or to have a reduced resale value, Midwest Waste may require Customer to pay Midwest Waste the charges incurred by Midwest Waste for hauling, processing and/or disposal of such material and for the reduction in resale value of such material. |
| **ARTICLE V**<br>**PAYMENT** | Customer agrees to pay Midwest Waste on a monthly basis for the services and/or equipment furnished by Midwest Waste in accordance with the charges and rates provided for herein. Payment shall be made by Customer to Midwest Waste within ten (10) days of an invoice from Midwest Waste. Midwest Waste may impose and customer agree to pay a late fee for all past due payment, such late fee as determined by Midwest Waste in an amount not to exceed the maximum rate for same allowed by applicable law. |
| **ARTICLE VI**<br>**RATE ADJUSTMENTS** | Because disposal and fuel costs constitute a significant portion of the cost of Midwest Waste's services provided hereunder Customer agrees that Midwest Waste may increase the rates hereunder proportionately to adjust for any increase in such costs or any increases in transportation costs due to changes in location of the disposal facility. Customer agrees that Midwest Waste may also increase the rates from time to time to adjust for increase in the Consumer Price Index, and Customer agrees that Midwest Waste may also proportionately pass through to Customer increases in the average weight per container yard of the Customer's Waste Materials, increases in Midwest Waste's costs due to changes in local, state or federal rules, ordinances or regulations applicable to Midwest Waste's operations or the services provided hereunder, and increases in taxes, fees or other governmental charges assessed against or passed through to Midwest Waste (other than income or real property taxes). Midwest Waste may only increase rates for reasons other than those set forth above with the consent of the Customer. Such consent may be evidenced verbally, in writing or by the actions and practices of the parties. |
| **ARTICLE VII**<br>**SERVICE CHANGES** | Changes to the type, size and amount of equipment, the type or frequency of service, and corresponding adjustments to the rates, may be made by agreement of the parties, evidenced either in writing or by the practices and actions of the parties, without affecting the validity of this Agreement and the Agreement shall be deemed amended accordingly. This Agreement shall continue in effect for the term provided herein and shall apply to changes of and new service address location of the Customer within the area in which Midwest Waste provides collection services. |
| **ARTICLE VIII**<br>**RESPONSIBILITY FOR EQUIPMENT** | The equipment furnished hereunder by Midwest Waste shall remain the property of Midwest Waste however Customer acknowledges that it has care, custody and control of the equipment while at the Customer's location and accepts responsibility for all loss or damage to the equipment (except for normal wear and tear or for loss or damage resulting from Midwest Waste's handling of the equipment) and for its contents. Customer agrees not to overload (by weight or volume), move or alter the equipment, and shall use the equipment only for its proper and intended purpose. Customer agrees to indemnify, defend and hold harmless Midwest Waste against all claims, damages, suits, penalties, fines and liabilities for injury or death to persons or loss or damage to property arising out of Customer's use. Operation or possession of the equipment. Customer agrees to provide unobstructed access to the equipment on the scheduled collection day. If the equipment is inaccessible so that the regularly scheduled pick-up cannot be made, Midwest Waste will promptly notify the Customer and afford the Customer a reasonable opportunity to provide the required access; however, Midwest Waste reserves the right to charge an additional fee for any additional collection service required by Customer's failure to provide such access. |
| **ARTICLE IX**<br>**DAMAGE TO PAVEMENT** | Customer recognizes the difficulty of ensuring that the Customer's pavement or driving surface is adequate to bear the weight of Midwest Waste's vehicles. Therefore, Customer agrees that Customer will be responsible for any damage to Customer's pavement, curbing or other driving surfaces resulting from the weight of Midwest Waste's vehicles providing service at the Customer location. |
| **ARTICLE X**<br>**LIQUIDATED DAMAGES** | In the event Customer terminates the Agreement prior to its expiration other than as a result of a breach by Midwest Waste or Midwest Waste terminates this Agreement for Customer's breach (including nonpayment), Customer agrees to pay Midwest Waste as liquidated damages a sum calculated as follows: (1) if the remaining term under this Agreement is 14 or more months, Customer shall pay its most recent monthly charges multiplied by 3; or (2) if the remaining term under this Agreement is less than 14 months, Customer shall pay its most recent monthly charge multiplied by 2. Customer expressly acknowledges that in the event of an unauthorized termination of this Agreement, the anticipated loss to Midwest Waste in such event is estimated to be the amount set forth in the foregoing liquidated damages provision and such estimated value is reasonable and is not imposed as a penalty. In the event Customer fails to pay Midwest Waste all amounts which become due under this Agreement, or fails to perform its obligations hereunder, and Midwest Waste refers such matter to an attorney, Customer agrees to pay, in addition to the amount due, any and all costs incurred by Midwest Waste as a result of such action, including, to the extent permitted by law, reasonable attorneys' fees. |
| **ARTICLE XI**<br>**SUSPENSION AND TERMINATION FOR CAUSE** | If, during the term of this Agreement either party shall be in breach of any provision of this Agreement, the other party may suspend or terminate its performance hereunder until such breach has been corrected; provided, however, that no termination shall be effective unless and until the complaining party has sent written notice of such breach to the other party and the other party has failed to cure breach within at least ten (10) days thereafter. |
| **ARTICLE XII**<br>**ASSIGNMENT** | Customer shall not assign this Agreement without the prior written consent of Midwest Waste, which shall not be unreasonable withheld. |
| **ARTICLE XIII**<br>**OPPORTUNITY TO PROVIDE ADDITIONAL SERVICES** | Midwest Waste values the opportunity to meet all of Customer's nonhazardous waste collection and disposal needs. Customer will provide Midwest Waste the opportunity to meet those needs and to provide, on a competitive basis, any additional nonhazardous waste collection and disposal services during the term of this Agreement. |
| **ARTICLE XIV**<br>**EXCUSE PERFORMANCE** | Neither party hereto shall be liable for its failure to perform or delay in performance hereunder due to contingencies beyond its reasonable control including, but not limited to, strikes, riots, compliance with laws or governmental orders, fired and acts of God and such failure shall not constitute a Default under this Agreement. |
| **ARTICLE XV**<br>**BINDING EFFECT** | This Agreement is a legally binding contract on the part of both Midwest Waste and Customer and their respective heirs, successors and assigns, in accordance with the terms and conditions set out herein. |
| **ARTICLE XVI**<br>**ENTIRE AGREEMENT** | This Agreement represents the entire understanding and agreement between the parties hereto and supersedes any and all prior agreements, whether written or oral, that may exist between the parties regarding same. |